1

2

3

4

Benjamin Davidson, Esq. – State Bar No. 241859
E-mail: bdavidson@bendavidsonlaw.com
LAW OFFICES OF BENJAMIN DAVIDSON, P.C.
116 S. Catalina Ave., Suite 101
Redondo Beach, CA 90277
Telephone: (323) 713-0010
Facsimile: (323) 488-688

5

6

Attorneys for Plaintiff,
MARK STEELE, individually, and on behalf of all others
similarly situated and other aggrieved employees

7

8

**UNITED STATES DISTRICT COURT**

9

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARK STEELE, individually, and on behalf of all others similarly situated and other aggrieved employees,

Plaintiff,

vs.

ASSURANCE IQ, LLC; PRUDENTIAL FINANCIAL, INC.; and DOES 1-20, inclusive,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **'25CV1614 BEN AHG**

**CLASS AND REPRESENTATIVE ACTION COMPLAINT FOR**

1. **Misclassification (Lab. Code § 226.8);**
2. **Violation of Federal WARN Act (29 U.S.C. § 2101, et. seq.);**
3. **Violation of Cal-WARN Act (Lab. Code § 1400, et. seq.);**
4. **Failure to Pay Overtime (Lab. Code § 510, et seq.);**
5. **Failure to Pay Minimum Wages (Lab. Code §§ 1194, 1197, 1197.1);**
6. **Failure to Provide Meal Periods (Lab. Code §§ 226.7 & 512);**
7. **Failure to Provide Accurate Wage Statements (Lab. Code § 226);**
8. **Violation of California Sick Leave Law (Lab. Code § 246, et seq.);**
9. **Waiting Time Penalties (Lab. Code §§ 201, 203);**
10. **Unfair Business Practices (BPC § 17200, et seq.); and**
11. **Violations of PAGA (Cal. Lab. Code § 2698, et seq.)**

Plaintiff Mark Steele ("PLAINTIFF"), on behalf of himself and all others similarly situated, for his Complaint against Defendants Assurance IQ, LLC ("ASSURANCE"), Prudential Financial, Inc. ("PRUDENTIAL"), and Does 1 through 20, inclusive ("DOES") (collectively, "DEFENDANTS"), states and alleges as follows:

## I.    <u>JURISDICTION AND VENUE</u>

1.    This Court's jurisdiction is based on 28 U.S.C. § 1332, on the grounds the PLAINTIFF is a citizen of the State of California, while Defendants ASSURANCE and PRUDENTIAL are incorporated and have their principal places of business in other states, and the amount in controversy exceeds $75,000.

2.    In addition, the Court has jurisdiction based on 29 U.S.C. § 1331, on the grounds that the matter is brought under the Worker Adjustment and Retraining Notification Act (WARN Act), including but not limited to 29 U.S.C. §§ 2102, 2104(a)(5).  This Court has supplemental jurisdiction over PLAINTIFF's state law claims under 28 U.S.C. § 1367.

3.    In addition, PLAINTIFF is informed and believes that jurisdiction is proper pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), on the grounds that the proposed class exceeds the 100-class-member, $5 million threshold.

4.    Venue in this district is proper under 28 U.S.C. § 1391(b) and (c), and section 5(a)(5) of the WARN Act (29 U.S.C. § 2104(a)(5)) because DEFENDANTS do business in this district, employed PLAINTIFF and many other individuals in this district, and the acts underlying the WARN Act claims occurred in this district.

## II.    <u>PARTIES</u>

### A.    <u>Plaintiff.</u>

5.    At all relevant times, PLAINTIFF was employed by DEFENDANTS as an insurance sales agent, in which capacity he was misclassified. He was damaged by DEFENDANTS' acts in violation of the Federal and California WARN Act, and various provisions of the Labor Code.

6. PLAINTIFF also brings this case as a representative action under the Private Attorneys General Act ("PAGA"), Labor Code §§ 2698-2699, on behalf of former employees of DEFENDANTS.

7. PLAINTIFF resides, and at all times relevant to this Complaint has resided, in San Diego County, California.

8. PLAINTIFF reserves the right to seek leave to amend this complaint to add new plaintiffs, if necessary, in order to establish suitable representative(s) pursuant to *La Sala v. American Savings and Loan Ass'n* (1971) 5 Cal.3d 864, 872, and other applicable law.

**B. Defendants.**

9. On information and belief, Defendant ASSURANCE is, and at all relevant times was, a Washington corporation with its principal place of business at 920 5th Ave., Suite 3600, Seattle, WA 98104. At all relevant times, ASSURANCE serviced clients throughout the United States, including throughout the State of California and in this District. At all relevant times, ASSURANCE maintained facilities (collectively, "the Facilities") that qualified for protection under the federal and state WARN Acts.

10. On information and belief, Defendant PRUDENTIAL is, and at all relevant times has been, a New Jersey corporation, with its principal place of business at 751 Broad St., Newark, NJ 07102. At all relevant times, PRUDENTIAL maintained facilities (collectively, "the Facilities") that qualified for protection under the federal and state WARN Acts. On information and belief, and based on public records, PRUDENTIAL maintained an office at 920 5th Ave., Suite 3600, Seattle, WA 98104, through which it served as a Manager or Member of ASSURANCE. On information and belief, PRUDENTIAL acquired ASSURANCE in or around September 2019, after which ASSURANCE remained a wholly owned subsidiary of PRUDENTIAL.

11.    PLAINTIFF is unaware of the true names and capacities of defendants named herein as DOES 1-20 ("DOE DEFENDANTS"), and as such names these DOE DEFENDANTS by such fictitious names.  Plaintiff will amend this complaint to identify the true names and capacities of the DOE DEFENDANTS when ascertained.

12.    PLAINTIFF alleges, upon information and belief, that each of the DEFENDANTS bears legal responsibility for the events and allegations described in this complaint and for PLAINTIFF's damages.

13.    PLAINTIFF is informed and believes that in doing the things alleged in this complaint, each DEFENDANT was acting as an agent or employee of every other DEFENDANT, was acting within the course and scope of this agency or employment, and was acting with the consent, permission, and authorization of each of the remaining DEFENDANTS. PLAINTIFF is also informed and believes that all actions of each DEFENDANT alleged in this complaint were ratified and approved by the officers or managing agents of every other DEFENDANT.

### III.    FACTUAL ALLEGATIONS

14.    ASSURANCE is an insurance technology company that offered life insurance, health insurance, property insurance, and the like to customers, until it ceased operations on or about April 30, 2024.

15.    PRUDENTIAL is a multinational financial services company offering a various products and services, including life insurance, annuities, retirement-related services, mutual funds, and investment management.

16.    On information and belief, at all relevant times, PRUDENTIAL, in its capacity as the parent company of ASSURANCE, and as the sole Manager or Member of ASSURANCE, directly controlled and operated ASSURANCE, and the management and executives of PRUDENTIAL oversaw and directed all major strategic, operational, and financial decisions at ASSURANCE.

17.     On information and belief, PRUDENTIAL directed and controlled the transfer, disposition and/or unwinding of ASSURANCE's assets, including its liquid monetary, financial and intellectual property assets, in connection with the cessation of ASSURANCE's operations on or about April 30, 2024.

18.     During the time period relevant to this action, on information and belief, DEFENDANTS employed approximately 1700 insurance sales agents nationwide, including several hundred in the State of California, including PLAINTIFF, all of which were misclassified as independent contractors, as alleged herein.

19.     PLAINTIFF's  relationship with DEFENDANTS began in July 2023, when he was hired by DEFENDANTS in the position of "Senior Agent," responsible for selling insurance policies on behalf of DEFENDANTS. DEFENDANTS hired PLAINTIFF as an independent contactor, and he remained classified as an independent contractor throughout his employment. PLAINTIFF worked remotely on a full-time basis for DEFENDANTS as a Senior Agent from his home in San Diego.

20.     As alleged herein, PLAINTIFF was misclassified as an independent contractor, and should properly have been classified as an employee. He was not free from the control and direction of ASSURANCE in connection with the performance of his work. For example:

a.     PLAINTIFF was required to log into DEFENDANTS' web-based CRM platform in order to receive calls and otherwise communicate with clients.  It was necessary to be constantly logged on to DEFENDANTS' system during work hours to maintain an employee's place in the call queue, which discouraged agents from taking off-duty breaks.  A sales agent who logged off the system in order to take an off-duty break would be placed at the very end of the queue when he or she logged back in;

b.     PLAINTIFF's communications with clients were monitored and

1  recorded by DEFENDANTS;

2      c.    PLAINTIFF was expected to work set hours and maintain a

3  consistent work schedule, and to report his upcoming work schedule to

4  DEFENDANTS;

5      d.    PLAINTIFF was subject to DEFENDANTS' policies and

6  procedures;

7      e.    PLAINTIFF was expected to frequently check in with his

8  supervisors and managers, including Sales Manager Joshua Travers (who on

9  information and belief was classified as an employee), regarding his duties and

10  responsibilities;

11      f.    PLAINTIFF was subject to DEFENDANTS' EVQ ("Efficiency,

12  Volume and Quality") metrics and compliance. Twice a week, his calls were

13  "scored," with 85% or higher a passing score. If he did not meet that threshold, he

14  was required to file a report within the system explaining what happened and how

15  he intended to correct it.

16      g.    PLAINTIFF was expected or required to attend mandatory

17  product trainings on the ASSURANCE platforms, and to attend regular meetings on

18  sales techniques and motivation. In fact, He himself was called upon to lead some of

19  the trainings.

20      21.    PLAINTIFF and, on information and belief, other sales agents were

21  paid on a strict commission basis, and he was not paid unless he made sales, no

22  matter how many hours he worked. PLAINTIFF's typical schedule was 5:00 a.m. to

23  2:00-3:00 p.m., 5 or 6 days per week. Moreover, due to the needs of the business,

24  including in order to attend to questions by and otherwise assist other sales agents,

25  he worked an additional 3-4 hours per week on average. He also was constantly on-

26  call, and that my bosses expected me to respond quickly whenever anything came

27  up, as it often did.  However, he was never paid an hourly wage because he was

28  misclassified as an independent contractor from the start of his employment. He

received no additional compensation – either straight time or overtime – regardless of how many hours he worked in a week.

22.    DEFENDANTS were aware of PLAINTIFF working overtime. The expectation was that he would stay logged into the system as long as his supervisors and managers needed him. Because PLAINTIFF was paid only on commissions, he, and on information and belief other insurance sales agents, were burdened with the tasks of those who were classified as employees, which on information and belief was done to reduce DEFENDANTS' payroll costs . DEFENDANTS were aware that PLAINTIFF would not receive additional pay for hours worked

23.    On or about April 30, 2024, ASSURANCE ceased operations selling insurance policies.  DEFENDANTS furloughed the entire workforce of sales agents who were paid through ASSURANCE, including PLAINTIFF, and directed that the relationship with such sales agents would be terminated without further pay.  At the time, due to their misclassification, DEFENDANTS' employees, including PLAINTIFF, were owed wages and compensation, which they have still not received.  In addition, many misclassified employees were also owed out-of-pocket work-related expenses for which they paid but for which they were not reimbursed. Moreover, at the time of the cessation of ASSURANCE's operations, PLAINTIFF and similarly situated misclassified employees were laid off and/or terminated without 60 days' advance notice as required by the Federal and California WARN Act.  On information and belief, PLAINTIFF's termination was effective on May 5, 2024.

24.    Through their actions, DEFENDANTS violated, *inter alia*, Labor Code §§ 201-203 (waiting time penalties); Labor Code §§ 204(b),(d) & 210 (failure to pay for all work performed, and for excessive labor no later than next payroll period; penalties thereon); Labor Code §§ 225 and 225 .5 (criminal and civil penalties for wage violations); Labor Code §§ 226(a), (e) and 226.3 (failure to furnish accurate itemized wage statements; penalties); Labor Code § 226.7 (meal period violations);

Labor Code § 226.8 (misclassification); Labor Code § 246 (failure to provide accrued sick leave or include in separate writing); Labor Code § 510 (failure to provide overtime compensation); Labor Code § 512(a) (failure to provide meal and rest periods); Labor Code § 553 and 558 (criminal and civil penalties for wage violations); Labor Code § 1402 and 1403 (California WARN Act); Labor Code § 1174(d), 1174.5, 1175 (failure to keep at central location accurate payroll records showing hours worked, wages paid, and other required information); Labor Code §§ 1182.12, 1194, 1197, 1197.1 and 1199 (failure to pay minimum wage and/or overtime compensation); Labor Code § 1198 (right of action for violation of IWC Wage Orders); and IWC Wage Order No. 4-2001, and/or any other applicable wage order, as described herein.

## IV.    CLASS ACTION ALLEGATIONS

25.    PLAINTIFF brings this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(1) and (3); the WARN Act (29 U.S.C. § 2104(a)(5)) and California's comparable state law, Labor Code § 1404); Labor Code §§ 204(b), 204(d), 210, 226(a) & (e), 226.3, 226.7, 226.8, 246, 510, 512(a), 553 and 558 (criminal and civil penalties for wage violations); Labor Code §§ 1402 and 1403 (California WARN Act); Labor Code §§ 1174(d), 1174.5, 1175 (failure to keep at central location accurate payroll records showing hours worked, wages paid, and other required information); Labor Code §§ 1182.12, 1194, 1197, 1197.1 and 1199 (failure to pay minimum wage and/or overtime compensation); Labor Code § 1198. Plaintiff also brings this case as a representative action under Labor Code § 2698, et seq. ("PAGA").

26.    PLAINTIFF brings this action on behalf of himself and all other similarly situated employees. PLAINTIFF seeks to represent a Class initially defined as:

> ***All of Defendants' California-based sales agents who were classified as independent contractors on or before April 30, 2024, and whose***

*relationship with Defendants was terminated as part of a mass layoff or plant closing involving Assurance IQ on or about April 30, 2024*.

27.     PLAINTIFF and proposed Class members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act, 29 U.S.C. § 2101(a)(5) and (6).

28.     PLAINTIFF and proposed Class members were subjected to "plant closings" and/or "mass layoffs" as those terms are defined in the federal WARN Act, 29 U.S.C. § 210.

29.     PLAINTIFF and the proposed Class members are "employees" at a "covered establishment" subject to a "mass layoff" and/or "termination" as those terms are defined in the California WARN Act, Labor Code § 1400(h), (a), (d) and (f), respectively.

30.     PLAINTIFF'S claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

31.     On information and belief, the members of the class exceed 200 in number. Joinder is therefore impracticable. The precise number of Class members and their addresses are readily determinable from the books and records of DEFENDANTS.

32.     There are common questions of fact and law as to the class that predominate over any questions affecting only individual Class members. The questions of law and fact common to the class arising from DEFENDANTS' actions include, without limitation, the following:

a.     whether DEFENDANTS' sales agents were misclassified as independent contractors;

b.     whether the provisions of the WARN Act (under both federal and California state law) apply;

c.     whether DEFENDANTS' employee terminations on or about April 30, 2024, constitute "plant closings," "terminations," and/or "mass layoffs"

1  under the WARN Act;

2          d.      whether DEFENDANTS failed to provide the notices required

3  by the WARN Act (29 U.S.C. § 2102(b); Labor Code § 1401);

4          e.      whether DEFENDANTS can avail themselves of any of the

5  provisions the WARN Act that permit shorter notice periods;

6          f.      the appropriate formulae to measure damages under the WARN

7  Act (29 U.S.C. § 2104(a)) as well as Labor Code § 1402);

8          g.      whether DEFENDANTS, in violation of Labor Code §§ 201-203

9  and/or 558.1, failed to timely pay PLAINTIFF and Class Members all wages due

10 upon termination or resignation;

11         h.      whether PLAINTIFF and other Class Members are entitled to

12 "waiting time" penalties pursuant to Labor Code § 203;

13         i.      whether DEFENDANTS, in violation of Labor Code §§ 204(b)

14 and 204(d), failed to compensate PLAINTIFF and Class Members for excess labor

15 no later than the next payroll period and/or to timely pay for all work performed

16 during each payroll period;

17         j.      whether PLAINTIFF and other Class Members are entitled to

18 penalties under Labor Code § 210 on account of DEFENDANTS' alleged violations

19 of Labor Code §§ 204(b) and/or 204(d);

20         k.      whether DEFENDANTS, in violation of Labor Code §§ 226(a),

21 (e) and 226.3, failed to furnish accurate itemized wage statements to PLAINTIFF

22 and other Class Members, and are therefore liable to statutory penalties thereon;

23         l.      whether DEFENDANTS, in violation of Labor Code § 226.7,

24 failed to provide PLAINTIFF and other Class Members with required meal and rest

25 periods and/or an additional hour of pay at the employee's regular rate of

26 compensation for each day in which a meal or rest period was not provided;

27         m.      whether DEFENDANTS, in violation of Labor Code § 226.8,

28 misclassified PLAINTIFF and other Class Members as independent contractors, and

whether DEFENDANTS are liable for civil penalties for engaging in a pattern or practice of these violations;

n.      whether DEFENDANTS, in violation of Labor Code § 246, failed to provide PLAINTIFF and, on information and belief, other current and former employees a written notice setting forth the amount of paid sick leave available, or paid time off leave provided in lieu of sick leave, for use on PLAINTIFF's and other Class Members' itemized wage statements or in a separate writing provided on the designated pay date with the employees' payment of wages;

o.      whether DEFENDANTS, in violation of Labor Code § 510, employed PLAINTIFF and other Class Members in excess of eight hours in one workday and/or in excess of 40 hours in one workweek without compensating them for all hours worked at one and a half times their regular hourly rate;

p.      whether DEFENDANTS, in violation of Labor Code § 512(a), employed PLAINTIFF and other Class Members for work periods of more than five hours per day without providing them with a meal period of not less than 30 minutes, and/or employed them for work periods of more than 10 hours per day without providing them with a second meal period of not less than 30 minutes;

q.      whether PLAINTIFF and other Class Members are entitled to penalties under Labor Code § 553 on account of DEFENDANTS' alleged violations of Labor Code §§ 510 and 512(a);

r.      whether DEFENDANTS violated Labor Code §§ 1174(d), 1174.5, and 1175 as to PLAINTIFF and other Class Members by failing to keep at a central location accurate payroll records showing hours worked, wages paid, and other required information;

s.      whether DEFENDANTS violated Labor Code §§ 1182.12, 1194, 1197, 1197.1 and 1199 by compensating PLAINTIFF and other Class Members less than the legal minimum wage or the legal overtime compensation applicable to them, including by failing to compensate them for all hours worked (failure to pay

minimum wage and/or overtime compensation); Labor Code § 1198 (right of action for violation of IWC Wage Orders)

t.      the appropriate definitions and formulae to measure payments to potentially offset damages.

33.    The questions set forth above predominate over any questions affecting only individual persons. A class action is superior to other available methods for the fair and efficient adjudication of the claims, particularly with respect to considerations of consistency, economy, efficiency, fairness and equity. The conduct of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member.

34.    A class action is the superior method for the fair and efficient adjudication of this controversy. DEFENDANTS have acted, or refused to act, on grounds generally applicable to the class. The presentation of separate actions by individual Class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for DEFENDANTS, and/or substantially impair or impede the ability of Class members to protect their interests.

35.    PLAINTIFF is an affected employee who was terminated by DEFENDANTS from employment at one of DEFENDANTS' Facilities on or about April 30, 2024, without the notice required by the WARN Act.  In addition, PLAINTIFF was a sales agent who was misclassified as an independent contractor and subject to the various additional violations of the Labor Code to which DEFENDANTS are alleged herein to have subjected other California sales agents. He is, therefore, a member of the class. PLAINTIFF is committed to pursuing this action and has retained counsel with extensive experience prosecuting complex wage, employment, and class action litigation. Accordingly, PLAINTIFF is an adequate representative of the class and has the same interests as all of its members.

36.     PLAINTIFF's claims are typical of the claims of the class. PLAINTIFF and all Class members sustained injuries and damages arising out of and caused by DEFENDANTS' common course of conduct in terminating them without adequate notice and in failing to pay them all wages, paid time off, and unreimbursed expenses due to them at the time of termination, as alleged herein.

37.     DEFENDANTS have acted or refused to act in respects generally applicable to the class, thereby making appropriate relief with regard to the members of the class as a whole, as requested herein.

38.     Further, class action treatment of this action is authorized and appropriate under the WARN Act (29 U.S.C. § 2104(a)(5); Labor Code § 1404), which provides that a plaintiff seeking to enforce liabilities under the WARN Act may sue either on behalf of his or her self, for other persons similarly situated, or both.

# V.    CAUSES OF ACTION.

## COUNT ONE

## Misclassification as Independent Contractor

## Labor Code § 226.8

## (Individual Claim against All Defendants)

39.     PLAINTIFF reasserts and re-alleges the allegations set forth above as though fully set forth herein.

40.     Labor Code § 226.8(a) provides that it is unlawful for "any person or employer" to willfully misclassify an employee as an independent contractor."

41.     DEFENDANTS, and each of them, constitute a "person or employer" within the meaning of Labor Code § 226.8(a).

42.     At all times within the applicable statute of limitations, PLAINTIFF and, on information and belief, other Class members (a) were not free from the control and direction of DEFENDANTS in connection with the performance of their work, either under the contract for the performance of the work and in fact; (b) their

work was not outside the usual course of DEFENDANTS' business; and/or (c) they were not customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed, and therefore PLAINTIFF and, on information and belief, other Class members were misclassified pursuant to the holding in *Dynamex Operations W. Inc. v. Superior Court* (2018) 4 Cal.5th 903, as codified in Labor Code § 2775.  Nor, to the extent applicable, were PLAINTIFF and other Class members properly classified pursuant to the holding in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341.

43.    DEFENDANTS, and each of them, voluntarily and knowingly misclassified PLAINTIFF and other insurance sales agents who are members of the Class as independent contractors, which constitutes "willful misclassification" within the meaning of Labor Code §§ 226.8 and 226.8(i)(4) and each of them is individually liable to PLAINTIFF and to the Class.

44.    Pursuant to California law and Labor Code §§ 226.8(b) and (j), PLAINTIFF and the Class are entitled to recover, and all DEFENDANTS are subject to, civil penalties, including, but not limited to, a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation, in addition to any other penalties or fines permitted by law.

45.    Furthermore, pursuant to Labor Code § 2753, "A person who, for money or other valuable consideration, knowingly advises an employer to treat an individual as an independent contractor to avoid employee status for that individual shall be jointly and severally liable with the employer if the individual is found not to be an independent contractor."

# COUNT TWO

## Violation of the Federal Worker Adjustment and Retraining Notification Act

## 29 U.S.C. § 2101, et. seq.

### (Individual and Class against all Defendants)

46.    PLAINTIFF reasserts and re-alleges the allegations set forth above as though fully set forth herein.

47.    At all times material herein, PLAINTIFF, and similarly situated persons, has been entitled to the rights, protections, and benefits provided under the federal WARN Act, 29 U.S.C. § 2101, et. seq. The federal WARN Act regulates the amount of notice an employer must provide to employees who will be terminated due to the employer's closing of a plant or mass layoffs, as well as the back pay and other associated benefits an affected employee is due based on a violation of the required notice period.

48.    DEFENDANTS were, and are, subject to the notice and back pay requirements of the federal WARN Act because they are individually and collectively a business enterprise that employs 100 or more employees, excluding part-time employees, as defined in the Act. 29 US.C. § 2101(1)(A).

49.    DEFENDANTS willfully violated the federal WARN Act by ordering a mass layoff of employees on or about April 30, 2014 without providing the required notice.

50.    Section 2103 of the federal WARN Act exempts certain employers from the notice requirements of the Act. 29 U.S.C. § 2103(1)-(2). None of the federal WARN Act exemptions, however, applies to DEFENDANTS. Accordingly, PLAINTIFF and proposed Class members are entitled to receive the notice and back pay required by the federal WARN Act (29 U.S.C. § 2102 and 2104).

51.    PLAINTIFF and all similarly situated employees have been damaged by DEFENDANTS' conduct constituting violations of the federal WARN Act and are entitled to damages for their back pay and associated benefits for each day of the

CLASS AND REPRESENTATIVE ACTION COMPLAINT

violation because DEFENDANTS have not acted in good faith or with reasonable grounds to believe their acts and omissions were not a violation of the federal WARN Act.

**COUNT THREE**

**Violation of the California Worker Adjustment and Retraining Notification Act**

**Labor Code § 1400, et. seq.**

**(Individual and Class Claim alleged against all Defendants)**

52.    PLAINTIFF reasserts and re-alleges the allegations set forth above.

53.    At all times material herein, PLAINTIFF, and similarly situated persons including the Class members, have been entitled to the rights, protections, and benefits provided under the California WARN Act, Labor Code § 1400, et. seq.

54.    The California WARN Act regulates the amount of notice an employer must provide to employees who will be terminated due to the employer's layoffs, as well as the back pay and other associated benefits an affected employee is due based on a violation of the required notice period.

55.    DEFENDANTS were, and are, subject to the notice and back pay requirements of the California WARN Act because the Facilities are covered establishments that employ 75 or more employees, excluding part-time employees, as defined by  Labor Code § 1400.

56.    DEFENDANTS willfully violated the California WARN Act by ordering a mass layoff of employees on or about April 30, 2024 without providing the required notice.

57.    The California WARN Act exempts certain employers from the notice requirements of the Act. None of the California WARN Act exemptions, however, apply to DEFENDANTS. Accordingly, PLAINTIFF and Class members must receive the notice and back pay required by the California WARN Act.

CLASS AND REPRESENTATIVE ACTION COMPLAINT

58.    PLAINTIFF and all similarly situated employees have been damaged by DEFENDANTS' conduct constituting violations of the California WARN Act and are entitled to damages for their back pay and associated benefits for each day of the violation because DEFENDANTS have not acted in good faith nor with reasonable grounds to believe its acts and omissions were not a violation of the California WARN Act.

## COUNT FOUR

### Failure to Pay Overtime Compensation

### Labor Code § 510, et seq.

### (Individual and Class Claim alleged against all Defendants)

59.    PLAINTIFF reasserts and re-alleges the allegations set forth above.

60.    PLAINTIFF and the other members of the Class for the period beginning four years prior to the filing of the Complaint and the present ("LABOR CLASS PERIOD") bring a claim for DEFENDANTS' willful and intentional violations of the Labor Code and the Industrial Welfare Commission requirements for DEFENDANTS' failure to pay these employees for all overtime worked, including, work performed in excess of eight (8) hours in a workday, and/or twelve (12) hours in a workday, and/or forty (40) hours in any workweek.

61.    Pursuant to Cal. Lab. Code § 204, other applicable laws and regulations, and public policy, an employer must timely pay its employees for all hours worked.

62.    Cal. Lab. Code § 510 further provides that employees in California shall not be employed more than eight (8) hours per workday and/or more than forty (40) hours per workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

63.    Cal. Lab. Code § 1194 establishes an employee's right to recover unpaid wages, including overtime compensation and interest thereon, together with the costs of suit. Cal. Lab. Code § 1198 further states that the employment of an

employee for longer hours than those fixed by the Industrial Welfare Commission is unlawful.

64.    During the LABOR CLASS PERIOD, PLAINTIFF and Class members were required by DEFENDANTS to work for DEFENDANTS and were not paid for all the time they worked or were not accurately compensated for all overtime hours worked.

65.    DEFENDANTS' uniform pattern of unlawful wage and hour practices manifested, without limitation, applicable to the Class as a whole, as a result of implementing a uniform policy and practice that failed to accurately record overtime worked by PLAINTIFF and other Class members and denied accurate compensation to PLAINTIFF and the other members of the Class for overtime worked, including, the overtime work performed in excess of eight (8) hours in a workday, and/or twelve (12) hours in a workday, and/or forty (40) hours in any workweek. 64. In committing these violations of the Labor Code, DEFENDANTS inaccurately calculated the amount of overtime worked and the applicable overtime rates and consequently underpaid the actual time worked by PLAINTIFF and other members of the Class. DEFENDANTS acted in an illegal attempt to avoid the payment of all earned wages, and other benefits in violation of the Labor Code, the Industrial Welfare Commission requirements and other applicable laws and regulations.

66.    As a direct result of DEFENDANTS' unlawful wage practices as alleged herein, PLAINTIFF and the other members of the Class did not receive full compensation for all overtime worked.

67.    Cal. Lab. Code § 515 sets out various categories of employees who are exempt from the overtime requirements of the law. None of these exemptions are applicable to PLAINTIFF and the other members of the Class. Further, PLAINTIFF and the other members of the Class were unlawfully misclassified as independent contractors in violation of California law, and are not subject to a valid collective bargaining agreement that would preclude the causes of action contained herein this

Complaint. Rather, PLAINTIFF brings this Action on behalf of himself and the Class based on DEFENDANTS' violations of nonnegotiable, non-waivable rights provided by the State of California.

68.    During the LABOR CLASS PERIOD, PLAINTIFF and the other members of the Class were paid less for time worked that they were entitled to, constituting a failure to pay all earned wages. DEFENDANTS failed to accurately pay PLAINTIFF and the other members of the Class overtime wages for the time they worked which was in excess of the maximum hours permissible by law as required by Cal. Lab. Code §§ 510, 1194 & 1198, even though PLAINTIFF and the other members of the Class were required to work, and did in fact work, overtime as to which DEFENDANTS failed to accurately record and pay using the applicable overtime rate as evidenced by DEFENDANTS' business records and witnessed by employees.

69.    By virtue of DEFENDANTS' unlawful failure to accurately pay all earned compensation to PLAINTIFF and the other members of the Class for the true time they worked, PLAINTIFF and the other members of the Class have suffered and will continue to suffer an economic injury in amounts which are presently unknown to them and which will be ascertained according to proof at trial.

70.    DEFENDANTS knew or should have known that PLAINTIFF and the other members of the Class were under compensated for all overtime worked. DEFENDANTS systematically elected, either through intentional malfeasance or gross nonfeasance, to not pay employees for their labor as a matter of uniform company policy, practice and procedure, and DEFENDANTS perpetrated this systematic scheme by refusing to pay PLAINTIFF and the other members of the Class for overtime worked, under the guise of purporting to classify them as independent contractors.

71.    In performing the acts and practices herein alleged in violation of California labor laws, and refusing to compensate the members of the Class for all

CLASS AND REPRESENTATIVE ACTION COMPLAINT

time worked and provide them with the requisite overtime compensation, DEFENDANTS acted and continues to act intentionally, oppressively, and maliciously toward PLAINTIFF and the other members of the Class with a conscious of and utter disregard for their legal rights, or the consequences to them, and with the despicable intent of depriving them of their property and legal rights, and otherwise causing them injury in order to increase company profits at the expense of these employees.

72.    PLAINTIFF and the other members of the Class therefore request recovery of all unpaid wages, including overtime wages, according to proof, interest, statutory costs, as well as the assessment of any statutory penalties against DEFENDANTS, in a sum as provided by the Labor Code and/or other applicable statutes.

73.    DEFENDANTS' conduct as alleged herein was willful, intentional and not in good faith. Further, PLAINTIFF and other Class Members are entitled to seek and recover statutory costs.

**COUNT FIVE**

**Failure to Pay Minimum Wages**

**Cal. Lab. Code §§ 1194, 1197 and 1197.1**

**(Individual and Class Claim alleged against all Defendants)**

74.    PLAINTIFF reasserts and re-alleges the allegations set forth above.

75.    PLAINTIFF and the other members of the Class bring a claim for DEFENDANTS' willful and intentional violations of the Labor Code and the Industrial Welfare Commission requirements for DEFENDANTS' failure to accurately record, calculate and pay minimum and reporting time wages to PLAINTIFF and Class members during the LABOR CLASS PERIOD.

76.    Pursuant to Cal. Lab. Code § 204, other applicable laws and regulations, and public policy, an employer must timely pay its employees for all hours worked.

77.    Cal. Lab. Code § 1197 provides the minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed in unlawful.

78.    Cal. Lab. Code § 1194 establishes an employee's right to recover unpaid wages, including minimum wage compensation and interest thereon, together with the costs of suit.

79.    DEFENDANTS maintained a uniform wage practice of paying PLAINTIFF and the other members of the Class for commissions only, without regard to the amount of time they worked. For instance, although PLAINTIFF reported his work schedule to DEFENDANTS and it was known when he was logged into the system, DEFENDANTS ignored this information and at no time paid him on an hourly basis.  As a result, PLAINTIFF routinely earned less than minimum wage for all hours worked.  Further, as set forth herein, DEFENDANTS' uniform policy and practice was to unlawfully and intentionally deny timely payment of wages due to PLAINTIFF and the other members of the Class.

80.    DEFENDANTS' uniform pattern of unlawful wage and hour practices manifested, without limitation, applicable to the Class as a whole, as a result of implementing a uniform policy and practice that denies accurate compensation to PLAINTIFF and the other members of the Class in regard to minimum wage pay.

81.    In committing these violations of the Labor Code, DEFENDANTS did not compensate PLAINTIFF and other members of the Class for all hours worked; indeed, they did not pay them at all for hours worked, but rather strictly for commissions on sales. DEFENDANTS acted in an illegal attempt to avoid the payment of all earned wages, and other benefits in violation of the Labor Code, the Industrial Welfare Commission requirements and other applicable laws and regulations.

82.    As a direct result of DEFENDANTS' unlawful wage practices as alleged herein, PLAINTIFF and the other members of the Class did not receive minimum wage compensation for their time worked for DEFENDANTS.

83.     During the LABOR CLASS PERIOD, PLAINTIFF and the other members of the Class were paid less for time worked that they were entitled to, constituting a failure to pay all earned wages.

84.    By virtue of DEFENDANTS' unlawful failure to accurately pay all earned compensation to PLAINTIFF and the other members of the Class for the true time they worked, PLAINTIFF and the other members of the Class have suffered and will continue to suffer an economic injury in amounts which are presently unknown to them and which will be ascertained according to proof at trial.

85.    DEFENDANTS knew or should have known that PLAINTIFF and the other members of the Class were undercompensated for their time worked. DEFENDANTS systematically elected, either through intentional malfeasance or gross nonfeasance, to not pay employees for their labor as a matter of uniform company policy, practice and procedure, and DEFENDANTS perpetrated this systematic scheme by refusing to pay PLAINTIFF and the other members of the Class the correct minimum wages for their time worked.

86.    In performing the acts and practices herein alleged in violation of California labor laws, and refusing to compensate the members of the Class for all time worked and provide them with the requisite compensation, DEFENDANTS acted and continues to act intentionally, oppressively, and maliciously toward PLAINTIFF and the other members of the Class with a conscious and utter disregard for their legal rights, or the consequences to them, and with the intent of depriving them of their property and legal rights, and otherwise causing them injury in order to increase company profits at the expense of these employees.

87.    PLAINTIFF and the other members of the Class therefore request recovery of all unpaid wages, according to proof, interest, statutory costs, as well as

the assessment of any statutory penalties against DEFENDANTS, in a sum as provided by the Labor Code and/or other applicable statutes. To the extent minimum wage compensation is determined to be owed to the Class members who have terminated their employment, DEFENDANTS' conduct also violates Labor Code §§ 201 and/or 202, and therefore these individuals are also be entitled to waiting time penalties under Cal. Lab. Code § 203, which penalties are sought herein on behalf of these Class members. DEFENDANTS' conduct as alleged herein was willful, intentional and not in good faith. Further, PLAINTIFF and other Class members are entitled to seek and recover statutory costs.

**COUNT SIX**

**Failure to Provide Required Meal Periods or Pay an Hour's Compensation in Lieu Thereof**

**Labor Code §§ 226.7 & 512**

**(Individual and Class Claim Against All Defendants)**

88.     PLAINTIFF reasserts and re-alleges the allegations set forth above.

89.     During the LABOR CLASS PERIOD, from time to time, DEFENDANTS failed to provide all the legally required off-duty meal breaks to PLAINTIFF and the other Class members as required by the applicable Wage Order and Labor Code.

90.     The nature of the work performed by PLAINTIFF and Class members did not prevent these employees from being relieved of all of their duties for the legally required off-duty meal periods. As a result of their work schedules, PLAINTIFF and other Class members were not fully relieved of duty by DEFENDANTS for their meal periods, and DEFENDANTS represented to PLAINTIFF, and on information and belief other Class members, that they did not need to take meal periods because they were independent contractors, not employees.  In fact, however, PLAINTIFF and other Class members were misclassified as independent contractors.

91.     Additionally, DEFENDANTS penalized employees who desired to take an off-duty meal period by dropping them to the bottom of the queue if they logged off the system to take their meal period, which they were obliged to do in order not to receive calls while off duty.  This resulted in reduced potential earnings, since sales agents relied predominantly on making sales through the call queue, and there could be a significant delay before making it back to the top of the queue.

92.     DEFENDANTS' failure to provide PLAINTIFF and the Class members with legally required meal breaks prior to their fifth (5th) hour of work, or at all, is evidenced by DEFENDANTS' business records from time to time. Further, DEFENDANTS failed to provide PLAINTIFF and Class members with a second off-duty meal period on workdays in which these employees were required by DEFENDANTS to work ten (10) hours of work. As a result, PLAINTIFF and other members of the Class forfeited meal breaks without additional compensation and in accordance with DEFENDANTS' strict corporate policy and practice.

93.     DEFENDANTS further violates Labor Code §§ 226.7 and the applicable IWC Wage Order by failing to compensate PLAINTIFF and non-exempt Class Members who were not provided a meal period, in accordance with the applicable Wage Order, one additional hour of compensation at each employee's regular rate of compensation for each workday that a meal period was not provided.

94.     As a proximate result of the aforementioned violations, PLAINTIFF and non-exempt Class Members have been damaged in an amount according to proof at trial, and seek all wages earned and due, interest, penalties, expenses and costs of suit.

### COUNT SEVEN

### Failure to Provide Accurate Itemized Wage Statements

### Labor Code §§ 226

### (Individual and Class Claims Against All Defendants)

95.     PLAINTIFF reasserts and re-alleges the allegations set forth above.

96.    Labor Code § 226 provides that an employer must furnish employees with an "accurate itemized" statement in writing showing:

1. Gross wages earned;

2. Total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission;

3. The number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis;

4. All deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item;

5. Net wages earned;

6. The inclusive dates of the period for which the employee is paid;

7. The name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement;

8. The name and address of the legal entity that is the employer; and

9. All applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

97.    During the LABOR CLASS PERIOD, DEFENDANTS failed to provide PLAINTIFF and the other members of the Class with complete and accurate wage statements which failed to show, among other things, (1) gross wages earned (i.e., which should have been paid had PLAINTIFF and Class members been properly classified); (2) total number of hours worked; (3) deductions; (4) net wages earned; and (5) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee, all in violation of Labor Code Section 226.

98.    DEFENDANTS knowingly and intentionally failed to comply with Labor Code § 226, causing injury and damages to the PLAINTIFF and the other members of the Class. These damages include, but are not limited to, costs expended

calculating the correct rates for the overtime worked and the amount of employment taxes which were not properly paid to state and federal tax authorities. These damages are difficult to estimate. Therefore, PLAINTIFF and the other members of the Class may elect to recover liquidated damages of fifty dollars ($50.00) for the initial pay period in which the violation occurred, and one hundred dollars ($100.00) for each violation in a subsequent pay period pursuant to Cal. Lab. Code § 226, all in an amount according to proof at the time of trial (but in no event more than four thousand dollars ($4,000.00)) for PLAINTIFF and each respective member of the Class herein.

**COUNT EIGHT**

**Violation of California Sick Leave Law**

**Labor Code § 246, et seq.**

**(Individual and Class Claims Against All Defendants)**

99.    PLAINTIFF reasserts and re-alleges the allegations set forth above.

100.   Labor Code § 246(b) provides in relevant part that "An employee shall accrue paid sick days at the rate of not less than one hour per every 30 hours worked, beginning at the commencement of employment. . . ."

101.   Labor Code § 246(c) provides in relevant part that "An employee shall be entitled to use accrued paid sick days beginning on the 90th day of employment, after which day the employee may use paid sick days as they are accrued."

102.   Labor Code § 246(i) provides in relevant part that "An employer shall provide an employee with written notice that sets forth the amount of paid sick leave available, or paid time off leave an employer provides in lieu of sick leave, for use on either the employee's itemized wage statement described in Section 226 or in a separate writing provided on the designated pay date with the employee's payment of wages."

103.   At no time during PLAINTIFF's employment and, on information and belief, the employment of other Class members, were PLAINTIFF or Class

members permitted to accrue sick days, either at an increment of one hour per every 30 hours, or at any other increment, nor were they given a "pre-loaded" number of hours at the start of every calendar year or anniversary date, or otherwise.

104.   At no time during PLAINTIFF's employment and, on information and belief, the employment of other Class members, were PLAINTIFF or Class members entitled to use accrued paid sick days beginning on the 90th day of employment.  In fact, when PLAINTIFF was unable to work due to illness, following the 90th day of his employment, he was not compensated for the days that he did not work, although he would have had sufficient time accrued to cover his absence had DEFENDANTS been in compliance.

105.   At no time during PLAINTIFF's employment and, on information and belief, the employment of other Class members, did DEFENDANTS provide PLAINTIFF or Class members with written notice that sets forth the amount of paid sick leave available, or paid time off leave that DEFENDANTS provide in lieu of sick leave, either on an itemized wage statement (which DEFENDANTS did not provide either), or in a separate writing provided on the designated pay date with the payment of wages.

106.   From time to time, PLAINTIFF and, on information and belief, other members of the Class were compensated at an hourly rate plus bonuses. As a matter of law, the bonus compensation received by PLAINTIFF and other members of the Class must be included in the "regular rate of pay."

107.   DEFENDANT's uniform policy and practice of failing to permit Class members to accrue sick leave, of failing to compensate Class members with sick pay when they were unable to work due to illness or another covered reason, and of failing to notify Class members of the amount of sick leave available, resulted in the nonpayment of sick pay wages to PLAINTIFF and other members of the Class. PLAINTIFF and other members of the Class therefore request recovery of all unpaid wages, including sick pay wages, according to proof, interest, statutory costs, as

well as the assessment of any statutory penalties against DEFENDANT, in a sum as provided by the Labor Code and/or other applicable statutes.

108.   Further, PLAINTIFF and other members of the CALIFORNIA CLASS are entitled to seek and recover statutory costs.

## COUNT FOUR

**Failure to Pay Waiting Time Penalties**

**Labor Code §§ 201, 203**

**(Individual and Class Claim alleged against all Defendants)**

109.   PLAINTIFF reasserts and re-alleges the allegations set forth above.

110.   Labor Code § 201 states that an employer is required to provide an employee who is terminated all accrued wages and compensation at the time of termination.

111.   Labor Code § 203 states that if an employer willfully fails to pay compensation promptly upon discharge, as required by § 201, then the employer is liable for waiting time penalties equivalent to the employee's daily wage, for a maximum of 30 days.

112.   PLAINTIFF and numerous Class members who were employed by DEFENDANTS were terminated on or about April 30, 2024.  Upon termination, however, PLAINTIFF and, on information and belief, other Class members were not paid all wages and paid time off that were due within the statutory time period.

113.   DEFENDANTS are employers who willfully failed and refused to pay timely compensation and wages for, among other things, unpaid back wages and personal time off.

114.   On information and belief, some or all of the DOE Defendants are also liable for violations of Section 203 of the Labor Code because they are "other person[s] acting on behalf of an employer" pursuant to Labor Code § 558.1. They personally and willfully acted to violate Section 203, and caused Section 203 to be

violated, by failing to pay terminated employees all accrued wages and compensation at the time of their termination.

115.   As a direct and proximate result of DEFENDANTS' willful conduct in failing to pay PLAINTIFF and former employee Class members for all hours worked, PLAINTIFF and affected members of the class are entitled to recover "waiting time" penalties of up to thirty (30) days' wages pursuant to § 203, with interest thereon, and reasonable attorneys' fees and costs.

**COUNT TEN**

**Unfair Business Practices**

**Business & Professions Code § 17200, et seq.**

**(Individual and Class Claims Against All Defendants)**

116.   PLAINTIFF reasserts and re-alleges the allegations set forth above.

117.   Business and Professions Code section 17200 et seq. makes it illegal to engage in "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

118.   Through the acts complained of in this Complaint, DEFENDANTS engaged in unfair competition within the meaning of Business and Professions Code section 17200 et seq.

119.   DEFENDANTS have committed, and continue to commit, unlawful, unfair, and/or fraudulent business acts or practices, as defined in Business & Professions Code section 17200, by among other things, engaging in the unlawful, unfair, and/or fraudulent acts complained of by PLAINTIFF in this Complaint.

120.   DEFENDANTS engaged in and continue to engage in acts and practices in violation of Business & Professions Code section 17200 by violating, among other things, California common law for tortious conduct in violation of California law, of the Labor Code and FLSA as alleged herein.

CLASS AND REPRESENTATIVE ACTION COMPLAINT

121. DEFENDANTS' conduct, acts, and practices in violation of the California statutes and common law above each constitute a separate and independent violation of Business & Professions Code section 17200 et seq.

122. DEFENDANTS' actions have damaged and continue to damage PLAINTIFF by, among other things, violating PLAINTIFF's rights under the aforementioned California statutes, common law, and as otherwise alleged in this Complaint.

123. Accordingly, PLAINTIFF is entitled to restitution of all monies that DEFENDANTS have improperly, unfairly, fraudulently, and/or unlawfully withheld from PLAINTIFF, to be determined according to proof at trial.

124. Pursuant to Business & Professions Code section 17200, PLAINTIFF also seeks and are entitled to an injunction prohibiting DEFENDANTS, and each of them, from engaging in any further acts of unfair competition in violation of section 17200 et seq.

**COUNT ELEVEN**

**Violations of Labor Code Private Attorney General Act**

**Labor Code § 2698, et seq.**

**(Individual and Collective Action against all Defendants)**

125. PLAINTIFF reasserts and re-alleges the allegations set forth above.

126. PLAINTIFF, as an aggrieved employee, brings a claim under Labor Code § 2698, et seq. in a representative capacity on behalf of current and former insurance sales agents of DEFENDANTS whose employment was terminated pursuant to the cessation of ASSURANCE's sale of insurance policies, and were subjected to the unlawful wage and hour practices alleged herein.

127. The Labor Code Private Attorneys General Act of 2004 ("PAGA"), Labor Code § 2698, et seq.,  grants California employees the right to bring a civil action for the violation of any provision of the Labor Code on behalf of themselves and other current or former employees in order to recover civil penalties.

PAGA is intended to assist in the achievement of maximum compliance with state labor laws by empowering aggrieved employees to act as private attorneys general in order to recover civil penalties for Labor Code violations that would otherwise be prosecuted by the state. See *Arias v. Superior Court* 46 Cal.4th 969, 980 (2009).

128.  PAGA permits an aggrieved employee to collect the civil penalty authorized by law and normally collectible by the California Labor and Workforce Development Agency. To address violations for which no penalty has been established, section 2699(f)  creates a private right of action for aggrieved employees and a default penalty in the amount of $100 for each aggrieved employee per pay period for the initial violation, and $200 for each aggrieved employee per pay period for each subsequent violation.

129.  PLAINTIFF hereby seeks to collect these civil penalties for the Labor Code violations described above, except where the civil penalty is provided by the statute itself, as well as the following:

130.  Under Labor Code § 558, civil penalties of fifty dollars ($50) for PLAINTIFF and each aggrieved employee per pay period for the initial violation of Labor Code § 558 where PLAINTIFF and aggrieved employees were not given unpaid and or compensated for underpaid wages; and for each subsequent violation, one hundred dollars ($100) for each underpaid aggrieved employee for each pay period.

131.  Labor Code § 2699(g) further provides that any employee who prevails in an action for civil penalties is entitled to an award of reasonable attorneys' fees and costs. PLAINTIFF hereby seeks to recover his attorneys' fees and costs under this fee and cost provision.

132.  On April 30, 2025, pursuant to  Labor Code § 2699.3 and Cal. Senate Bill No. 838, PLAINTIFF timely submitted online notice to the Labor and Workforce Development Agency (LWDA) of the specific provisions of the Labor

Code that have been violated, including the facts and theories to support the violations, including the following:

       a.    Labor Code §§ 201-203 (waiting time penalties);

       b.    Labor Code §§ 204(b),(d) & 210 (failure to pay for all work performed, and for excessive labor no later than next payroll period; penalties thereon);

       c.    Labor Code §§ 225 and 225 .5 (criminal and civil penalties for wage violations);

       d.    Labor Code §§ 226(a), (e) and 226.3 (failure to furnish accurate itemized wage statements; penalties);

       e.    Labor Code § 226.7 (meal period violations);

       f.    Labor Code § 226.8 (misclassification);

       g.    Labor Code § 246 (failure to provide accrued sick leave or include in separate writing);

       h.    Labor Code § 510 (failure to provide overtime compensation);

       i.    Labor Code § 512(a) (failure to provide meal periods);

       j.    Labor Code § 553 and 558 (criminal and civil penalties for wage violations);

       k.    Labor Code § 1402 and 1403 (California WARN Act);

       l.    Labor Code § 1174(d), 1174.5, 1175 (failure to keep at central location accurate payroll records showing hours worked, wages paid, and other required information);

       m.    Labor Code §§ 1182.12, 1194, 1197, 1197.1 and 1199 (failure to pay minimum wage and/or overtime compensation);

       n.    Labor Code § 1198 (right of action for violation of IWC Wage Orders); and

       o.    IWC Wage Order No. 4-2001, and/or any other applicable wage order

CLASS AND REPRESENTATIVE ACTION COMPLAINT

133.   PLAINTIFF sent this notice to DEFENDANTS by certified mail, as required by statute.

134.   The case was subsequently assigned Case No. LWDA-CM-1095829-25.  LWDA has not informed PLAINTIFF that it will be pursuing any claims.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF, on behalf of himself and all similarly situated employees, demands judgment against DEFENDANTS, and each of them, and prays for:

(1) an order certifying that the action may be maintained as a class action under Federal Rule of Civil Procedure 23;

(2) designation of the named PLAINTIFF as the representative of the class and counsel of record as Class Counsel;

(3) that the Court declare that DEFENDANTS' policies and/or practices of misclassifying PLAINTIFF and Class Members as independent contractors violated California law;

(4) that the Court declare that DEFENDANTS' policies and/or practices constituted a pattern or practice of willful misclassification in violation of Labor Code § 226.8;

(5) an award to PLAINTIFF and Class Members of damages in the amount of unpaid overtime wages, minimum wages, liquidated damages, interest, and penalties subject to proof at trial;

(6) an award of damages and penalties to PLAINTIFF and the Class Members for DEFENDANTS' failure to provide accurate itemized wage statements, pursuant to Labor Code § 226(a);

(7) an award to PLAINTIFF and the Class Members of one (1) hour of additional pay at the regular rate of compensation for each workday that meal periods were not provided, pursuant to Labor Code § 226.7 and Wage Order 5(11), and interest thereon;

1    (8) compensatory damages in an amount equal to at least the amounts

2  provided by the WARN Act (29 U.S.C. § 2104(a); Labor Code § 1402(a));

3    (9) reasonable attorneys' fees, costs and disbursements as allowed by the

4  WARN Act (20 U.S.C. § 2104(1)(6); Labor Code § 1404);

5    (10) "waiting time penalties" pursuant to Labor Code § 203 with interest

6  thereon, and reasonable attorneys' fees and costs;

7    (11) an order that DEFENDANTS make restitution to PLAINTIFF and Class

8  Members for DEFENDANTS due to their unlawful business practices as described

9  herein pursuant to California Business and Professions Code §§ 17200-17205 and

10 Labor Code § 1199;

11    (12) an award to Class Representative PLAINTIFF and the Class Members of

12 reasonable attorneys' fees and costs, pursuant to California Civil Procedure Code §

13 1021.5, Labor Code §§ 226, 1194, and/or other applicable law;

14    (13) PAGA civil penalties, and reasonable attorney fees and costs, under

15 Labor Code § 2698, et seq.;

16    (14) such other relief as the Court deems fair and equitable.

17                    **DEMAND FOR JURY TRIAL**

18 PLAINTIFF hereby requests trial by jury of all issues triable by jury.

19

20  Dated: June 23, 2025          LAW OFFICES OF BENJAMIN DAVIDSON, P.C.

21

22                        By: _____

23                            BENJAMIN DAVIDSON, ESQ.

24                            Attorneys for Plaintiff,
                             MARK STEELE

25

26

27

28